IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| SNYDER/DONALDSON, LLC, ET AL. | * | |
| v. | * | Civil No. RDB-17-02950 |
| ANNE ARUNDEL COUNTY, MD, ET AL. | * | |

******

**MEMORANDUM**

Plaintiffs Snyder/Donaldson, LLC and Snyder Development Corporation (collectively "Snyder") file suit against defendants Anne Arundel County, Maryland (the "County"), the CalAtlantic Group, Inc. ("CalAtlantic"), and Mandrin Homes, LTD. ("Mandrin"), seeking a declaratory judgment and damages for breach of contract and violation of the Due Process Clause of the Fourteenth Amendment. This dispute arises out of an agreement to construct and share use of a temporary sewer pumping station. Now pending is plaintiffs' motion for *Burford* abstention and remand.[1] The parties have fully briefed the issues, and no oral argument is necessary. *See* Local Rule 105.6. For the reasons set forth below, the motion for *Burford* abstention is granted. Count I will be remanded to the Circuit Court for Anne Arundel County, while Counts II and III will remain in this court, where they will be stayed pending the resolution of the remanded claim.

---

[1] In *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943), The United States Supreme Court held that a federal district court may, in its sound discretion, abstain from exercising its jurisdiction in order to show "'proper regard for the rightful independence of state governments in carrying out their domestic policy.'" 319 U.S. at 318 (citation omitted). This principle, known as the *Burford* abstention doctrine, is an "'extraordinary and narrow exception' to a federal court's duty to exercise the jurisdiction conferred on it." *Martin v. Stewart*, 499 F.3d 360, 363 (4th Cir. 2007) (quoting *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716, 728 (1996)). In *Martin v. Stewart*, 499 F.3d 360, the United States Court of Appeals for the Fourth Circuit observed that the *Burford* abstention doctrine permits a federal court to abstain from exercising its jurisdiction "when the availability of an alternative, federal forum threaten[s] to frustrate the purpose of a state's complex administrative system." *Id.* at 364. Questions of state and local land use and zoning law are "classic example[s] of situations in which 'the exercise of federal review . . . would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.'" *Pomponio v. Fauquier County Bd. of Supervisors*, 21 F.3d 1319, 1327 (4th Cir. 1994).

1

## BACKGROUND

Mandrin is the developer of Evergreen Commons, a residential land subdivision in the County. (ECF No. 12, ¶ 9). The homes in Evergreen Commons will ultimately connect to a County sewage pumping station. (*Id.* at ¶ 12). At the time of development, however, Evergreen Commons could not connect to this station. (*Id.*). Therefore, Mandrin agreed to construct an interim station to connect Evergreen Commons to the County's sewage system until the permanent station became available. (*Id.* at ¶ 13).

In 2008, developers of other properties near Evergreen Commons, including Snyder, agreed to jointly fund the construction of the interim station, so that sewer service would also be available to their residential subdivisions. (*Id.* at ¶ 14). The parties entered into a non-binding Memorandum of Understanding ("MOU"), which established that Mandrin would construct the station "for the benefit of all parties" and that the parties would share the costs of the construction "in direct proportion with the number of units" associated with the interim station. (*Id.* at ¶ 15).

In October 2010, Mandrin entered into a Sewage Pumping Station Utility Agreement with the County. (*See* ECF No. 12-2). The agreement, which bound Mandrin to construct and install the station at no cost to the County, was recorded in the County's Land Records. (ECF No. 12, ¶ 16).

In May 2012, Mandrin entered into a Subsequent User Agreement (the "Agreement") with the County. (*See* ECF No. 12-3). The Agreement provided that the County would allow Mandrin to recoup "a portion of the project Cost"—that amount over and above those improvements required by the County Code—from the other users of the interim station. (ECF No. 12, ¶ 17). The Agreement set forth a procedure by which the County was to notify the other users of the requirement that they share the cost of the interim station. (*Id.* at ¶ 21). Specifically,

2

the County was to notify each user within thirty days of determining how much sewer allocation it would grant that user. (*Id.*). The Agreement did not mention Snyder by name and was not recorded in the County's Land Records. (*Id.* at ¶¶ 18, 20). As a result, Snyder claims it knew nothing about the Agreement, including that the cost estimate for the interim station had increased by more than $240,000 since the time of the MOU—a fact set forth in the Agreement—or that Snyder was now responsible for paying a portion of that increase. (*Id.* at ¶ 20).

In August 2013, Snyder asked the County for sewer allocation. (*Id.* at ¶ 22). The County determined what sewer capacity Snyder would be allotted and informed Snyder that it owed $552,528 for this allotment. (*Id.* at ¶ 23). The letter relaying this information stated that it was the "only notice regarding [Snyder's] Anne Arundel County public water and sewer allocation and payment procedures." (*See* ECF No. 12-6).

The $552,528 did not include the amount Snyder owed for use of the interim station. (ECF No. 12, ¶¶ 23-24). And although by the terms of the Agreement the County should have told Snyder how much it owed for use of the interim station within thirty days of its decision, the County did not do so. (*Id.* at ¶ 24). Instead, it waited almost one year before notifying Snyder that it would owe $8,223.00 for each building which would connect to the interim station. (*Id.* at ¶ 25).

Snyder immediately disputed the legality of this additional fee, believing the $552,528 paid in 2013 was the full amount owed. (*Id.* at ¶ 26). Nevertheless, it has since paid the costs associated with three of its buildings under protest. (*Id.* at ¶ 28). It has also sold one of its Homebuilders Lots. (*Id.* at ¶ 29). It claims it was forced to do so at a reduced price, in light of the fee the buyers will incur once they connect to the interim station. (*Id.*). Cumulatively, Snyder believes it has suffered more than $300,000 in damages as a result of the allegedly improper

3

charges. (*Id.* at ¶ 30).

On September 20, 2017, Snyder filed an amended complaint in the Circuit Court for Anne Arundel County. (*See* ECF No. 12). It asked for a declaration that it has no obligations under the Agreement, claimed that defendants violated the Due Process Clause of the Fourteenth Amendment by not affording Snyder a chance to object to the Agreement, and claimed that the County has breached the Agreement. (*See* ECF No. 12). On October 6, 2017, the County removed the case to this court. (*See* ECF No. 1). On November 3, 2017, Snyder filed this motion, asking the court to abstain under the *Burford* doctrine and to remand this case to state court. (*See* ECF No. 20).

**STANDARD**

Under 28 U.S.C. § 1447, a party may file "a motion to remand [a] case on the basis of any defect other than lack of subject matter jurisdiction . . . within 30 days after the filing of the notice of removal . . . ." Although "federal courts have the power to dismiss or remand cases based on abstention principles," they may do so "only where the relief being sought is equitable or otherwise discretionary." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 731 (1996).

Abstention principles constitute "'extraordinary and narrow exception[s]' to a federal court's duty to exercise the jurisdiction conferred on it." *Martin v. Stewart*, 499 F.3d 360, 363 (4th Cir. 2007) (quoting *Quackenbush*, 517 U.S. at 716, 728). One such doctrine, the *Burford* abstention doctrine, permits a federal court to abstain from exercising its jurisdiction "when the availability of an alternative, federal forum threaten[s] to frustrate the purpose of a state's complex administrative system." *Id.* at 364.

4

# ANALYSIS

## I. *Burford* Abstention

Federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them" by Congress. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). The *Burford* doctrine relaxes this obligation, allowing federal courts to abstain from hearing cases in two very limited circumstances where "federal adjudication would unduly intrude upon complex state administrative processes." *Martin*, 499 F.3d at 364. Courts may abstain when "(1) there are difficult questions of state law . . . whose importance transcends the result in the case then at bar; or (2) federal review would disrupt state efforts to establish a coherent policy with respect to a matter of substantial public concern." *Id.* (citing *Quackenbush*, 517 U.S. at 726; *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 361-63 (1989)).

Although in most contexts abstention "is the exception, not the rule," *Colorado River*, 424 U.S. at 813, just the opposite is true when the underlying dispute arises solely out of state or local zoning or land use law. Indeed, the United States Court of Appeals for the Fourth Circuit has noted that "cases involving questions of state and local land use and zoning law are a classic example of situations in which 'the exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.'" *Pomponio v. Fauquier County Bd. of Supervisors*, 21 F.3d 1319, 1327 (4th Cir. 1994). Therefore, "absent unusual circumstances, a district court should abstain under the *Burford* doctrine from exercising its jurisdiction in cases arising solely out of state or local zoning or land use law." *Id.* This is true even where a party "attempts to disguise the issues as federal claims." *Id.* "In cases in which plaintiffs' federal claims stem solely from construction of state or local land use or zoning law, not involving the constitutional validity of

5

the same and absent exceptional circumstances . . . the district courts should abstain under the *Burford* doctrine to avoid interference with the State's or locality's land use policy." *Id.* at 1328.

This case plainly arises out of local land use law. Resolving Snyder's claims requires interpreting provisions of the Anne Arundel County Code concerning the County's sewage system. *See* Anne Arundel, Md., County Code Art. 13, § 5-110. Article 13, Section 5-110 of the County Code authorizes the County to enter into agreements with developers that permit those developers to recoup the costs of improvements to the County's sewage system from subsequent users. *Id.* at § 5-110(a)(1). The Director of the Department of Inspections and Permits "may negotiate and prescribe the terms and conditions of each agreement in order to carry out the intent of this section and protect the interests of the County." *Id.* at § 5-110(c).

Snyder challenges the manner in which the Agreement—a contract entered into by the County according to the discretion set forth in § 5-110(c)—was implemented. First, Snyder claims it has no duties or obligations under the Agreement. Second, Snyder claims defendants breached the Due Process Clause by not affording Snyder a chance to object to the Agreement. Third, Snyder claims defendants, including the County, breached the Agreement. Because the County entered into the Agreement pursuant to § 5-110(c), a court addressing Snyder's claims must interpret this provision, which is only a small part of a greater statutory scheme regulating the use of the County's sewage system. Notably, Snyder has not advanced the argument that § 5-110 is unconstitutional.[2] For these reasons, this court will follow the Fourth Circuit's direction and abstain under the *Burford* doctrine.

---

[2] The fact that Snyder's challenge does not "involv[e] the constitutional validity of [a local law]" is what distinguishes this case from *Martin v. Stewart*, 499 F.3d 360 (2007), the lone case cited by defendants. Abstention was improper in *Martin* because plaintiff's claims were "a *facial* attack on the state statutes *as a whole*—precisely the sort of case federal courts often and expertly entertain." *Id.* at 367 (emphasis in original). In *Pomponio* the Fourth Circuit explicitly distinguished such cases—which "involv[e] the constitutional validity of [a local law]"— from those warranting *Burford* abstention. 21 F.3d at 1328. Here, Snyder does not argue that § 5-110 is facially unconstitutional, but instead challenges the County's conduct pursuant to that local land use provision. As a result,

## II. Proper Relief

Having determined that this case falls within the narrow range of circumstances in which *Burford* abstention is appropriate, the court must now decide what relief to issue. Snyder asks the court to remand the entire action to the Circuit Court for Anne Arundel County. However, federal courts lack the power to remand legal claims—claims for damages—based on abstention principles. Indeed, in *Quackenbush*, the Supreme Court held that federal courts may *remand* equitable or discretionary claims based on abstention principles, but may only *stay* legal claims based on those same principles. *See* 517 U.S. at 721 ("We have thus held that in cases where the relief being sought is equitable in nature or otherwise discretionary, federal courts not only have the power to stay the action based on abstention principles, but can also, in otherwise appropriate circumstances, decline to exercise jurisdiction altogether by either dismissing the suit or remanding it to state court. By contrast, while we have held that federal courts may stay actions for damages based on abstention principles, we have not held that those principles support the outright dismissal or remand of damages actions.").

In certain cases where abstention is appropriate, the plaintiff will have asserted both legal and equitable claims. In such cases, *Quackenbush* dictates that the equitable claims should be remanded to state court while the legal claims should remain in federal court, where they should be stayed. *See I-77 Properties, LLC v. Fairfield County*, 288 Fed. Appx. 108, 111 (4th Cir. 2008) ("It is still clear that federal courts may dismiss claims for equitable relief on *Burford* abstention grounds while staying action on claims for damages"); *Johnson v. Collins Entertainment Co., Inc.*, 199 F.3d 710, 727 (4th Cir. 1999) (*Quackenbush* "will sometimes require that the damages

---

unlike in *Martin*, a court will have to interpret local law in order to resolve Snyder's claims. If this court were to do so, it would risk interfering with the County's overall scheme regulating the use of its sewage system.

7

portion of an action remain in federal court while claims for equitable relief are dismissed [or remanded]").

Here Snyder seeks both an equitable remedy—a declaration that because the Agreement is void as applied to Snyder it owes no duties under the Agreement—and a legal remedy—at least $300,000 in damages. In light of *Quackenbush*, as interpreted in *I-77 Properties* and *Johnson*, Snyder's claims for equitable relief should be remanded to state court, while its claims for legal relief should remain in this court, where they should be stayed pending the resolution of the state court proceeding.

Regrettably, Snyder's complaint does not make clear which requested relief follows from which claim. Instead, a single "wherefore" clause—which contains both the request for equitable relief and the request for damages—follows a list of the three different claims. Therefore, the court is left to untangle the complaint in order to decide which claims are legal and which claims are equitable.

The best reading of the complaint is that Count I is equitable while Counts II and III are legal. In Count I, Snyder requests a declaratory judgment. In *Quackenbush*, the Supreme Court found that because declaratory judgments—like equitable claims—are discretionary, such claims should be remanded to state court where abstention is appropriate. *See* 517 U.S. at 718 ("[W]e have recognized that the authority of a federal court to abstain from exercising its jurisdiction extends to all cases in which the court has discretion to grant or deny relief. Accordingly, we have not limited the application of the abstention doctrines to suits for injunctive relief, but have also required federal courts to decline to exercise jurisdiction over certain classes of declaratory judgments.") In Counts II and III, Snyder asserts claims for violation of the Due Process Clause and breach of contract. If proven, both claims could result in the payment of money damages. *See, e.g., United States v. Winstar Corp.*, 518 U.S. 839, 885 (1996) (plurality opinion) (citing the

Restatement (Second) of Contracts for the proposition that "damages are always the default remedy for breach of contract"); *Carey v. Piphus*, 435 U.S. 247, 266 (1978) ("Because the right to procedural due process is absolute in the sense that it does not depend upon the merits of a claimant's substantive assertions, and because of the importance to organized society that procedural due process be observed . . . we believe that the denial of procedural due process should be actionable for nominal damages without proof of actual injury.") (internal citations omitted). In this context, where Snyder has not clearly alleged which of its claims entitles it to damages, the court assumes Snyder alleges both the Due Process and breach of contract claims entitle it to damages. As a result, the court will treat both claims as legal rather than equitable.

Accordingly, the court will remand Count I to the Circuit Court for Anne Arundel County for a determination of Snyder's obligations under the Agreement. The court will stay resolution of Counts II and III—the Due Process and breach of contract claims—pending resolution of the remanded claim.

## **CONCLUSION**

For the foregoing reasons, plaintiffs' motion for *Burford* abstention is granted. Having found that *Burford* abstention is appropriate, the court will remand Count I to state court and will stay Counts II and III pending the resolution of the remanded claim. A separate order effecting that ruling is being entered herewith.

December 28, 2017
Date

_/s/ Richard D. Bennett_
Richard D. Bennett
United States District Judge

9